UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**DOROTHY ALFORD**                                                                  **PLAINTIFF**

**V.**                                                          **CIVIL ACTION NO.1:07CV814 LTS-RHW**

**STATE FARM FIRE AND CASUALTY COMPANY, ET AL.**         **DEFENDANTS**

## MEMORANDUM OPINION

The Court has before it the motion [143] of State Farm Fire and Casualty Company (State Farm) To Compel Compliance with Order of Disqualification and Objection to the Notice of Appearance of Provost Umphrey Law firm, L.L.P. This motion refers to the disqualification order entered on April 4, 2008, in *McIntosh v. State Farm Fire and Cas. Co.*, No. 1:06cv1080, Docket Number [1173]. This order disqualified the members of the Scruggs Katrina Group and the Katrina Litigation Group and their associated counsel. The Provost Umphrey Law Firm, LLP (Provost Umphrey) has entered its appearance as counsel for the plaintiff in this case, and State Farm asserts that this firm is disqualified from acting as plaintiff's counsel under State Farm's interpretation of the terms of this disqualification order. I disagree, and I will deny the motion for the reasons set out below.

Provost Umphrey is a Texas law firm that has agreed, after negotiations with plaintiff's former counsel, Don Barrett (Barrett), to undertake representation of those former clients of Barrett's and the SKG who wish to engage Provost Umphrey as their replacement counsel. My prior order of disqualification was based upon the members of the SKG and the KLG's having knowledge (actual and constructive) of improper payments made by Richard Scruggs (Scruggs) to Cori and Kerri Rigsby. In order to assure that this action and the other actions affected by my disqualification order could proceed to a final resolution with a minimum impact from these payments, I also disqualified all the attorneys who had been associated by Scruggs, the SKG, or the Katrina Litigation Group (KLG). This order required hundreds of claimants to retain new counsel.

State Farm alleges that Barrett's having recommended Provost Umphrey and his having undertaken to negotiate an arrangement with Provost Umphrey to take over the representation of his former clients is a violation of the order of disqualification. I do not think this is the case.

A reading of the letter Barrett sent to the former SKG/KLG clients indicates that he has not engaged Provost Umphrey to represent his former clients.  The letter recommends that the former clients engage the services of Provost Umphrey "on the same terms" under which Barrett and the SKG had negotiated with these former clients.  This letter indicates that Barrett is strongly recommending that his former clients engage Provost Umphrey to carry on this litigation.  Yet a fair reading of this letter also indicates that the former clients are free to accept or reject this recommendation.

In light of my order of disqualification, it is reasonable to expect that Barrett and his associates would do everything in their power to minimize the adverse impact of my decision on the continued litigation of their former clients' cases.  I do not find it unreasonable that these clients would, in some instances, turn to Barrett for his recommendation of a replacement attorney.  Nor do I find it unreasonable that Barrett should make an arrangement with Provost Umphrey that affords Barrett's former clients an option to accept Provost Umphrey as its new counsel.  I see nothing sinister or suspicious in Barrett's having made this arrangement with a law firm with which he was already familiar and one in which he has confidence.

Provost Umphrey's subletting office space in a Nashville branch office of Barrett's firm and their separately using the services of one part-time employee in their Nashville offices does not signify an association so close as to require disqualification of Provost Umphrey under my earlier order of disqualification. (Declaration of Michael Hamilton, Exhibit Three to Plaintiff's Memorandum of Law in Response to Defendant State Farm Fire and Casualty Company's Motion To Compel Compliance with Order of Disqualification and Objection to Notice of Appearance of Provost Umphrey Law Firm, L.L.P.)

The declaration of Walter Umphrey (Umphrey), states that prior to April 4, 2008, the date the disqualification order was entered, "Provost Umphrey has never been associated with KLG in any Katrina Litigation, or in any litigation whatsoever which related in anyway to non-payment of claims by any insurance company arising out of hurricane losses . . .  never participated in any meetings or conferences with KLG or its attorneys . . . , never interviewed any witnesses for or with KLG, never attended any depositions or hearings for or with KLG and never had any contact with KLG whatsoever about anything related to Katrina litigation." (Declaration of Walter Umphrey, Exhibit One to Plaintiff's Memorandum of Law in Response to Defendant State Farm Fire and Casualty Company's Motion To Compel Compliance with Order of Disqualification and Objection to Notice of Appearance of Provost Umphrey Law Firm, L.L.P.)  Umphrey's statements are confirmed by the Affidavit of John W. (Don) Barrett (Exhibit Two to Plaintiff's Memorandum of Law in Response to Defendant State Farm Fire and Casualty Company's Motion To Compel Compliance with Order of Disqualification and Objection to Notice of Appearance of Provost Umphrey Law Firm, L.L.P.)  These representations belie the contention that Provost Umphrey was an associated firm within the meaning of the order of disqualification.

State Farm asserts that the arrangement between Barrett and Provost Umphrey is in fact a thinly-veiled association to disguise Barrett's continued representation of the plaintiffs, in order to evade my earlier order. I will not assume that this is the case, and I see no evidence in the record that would support my making a finding that this type of misconduct is occurring. I believe that all of the attorneys who practice before this Court, including the members of the SKG/KLG, make good faith efforts to properly interpret and honor the Court's orders, as their duties require. There is no indication that Barrett or any of the other disqualified attorneys have made any effort to evade or disobey my order of disqualification.

When attorneys have been uncertain of the scope of my order they have sought and received clarification. See: *McIntosh v. State Farm Fire and Cas. Co.*, No. 1:06cv 1080, Docket Entries [1176] [1183] [1188] and [1193]. These subsequent orders make it clear that any attorney who had participated, in association with any member of the SKG or the KLG, in representing any plaintiff on a Katrina claim before the entry of my order of disqualification was covered, i.e. was disqualified, by that order. Provost Umphrey would be subject to disqualification had it become associated with Barrett, the SKG, or the KLG on any of the Katrina cases before the order of disqualification. But I see no evidence in the record before me that this is the case.

State Farm contends that there exists an irreconcilable conflict of interests that should disqualify Provost Umphrey from accepting the representation of any of Barrett's former clients. In State Farm's view these former clients have a right of action against Barrett and the other members of the SKG, and Provost Umphrey would be duty bound to pursue that right of action on their behalf. I believe that Provost Umphrey is fully capable of determining whether there exists a potential conflict of interest in these circumstances and of acting appropriately on their judgment. I do not believe the potential or hypothetical conflict of interest that State Farm has identified is sufficient to justify my entering an order disqualifying Provost Umphrey from undertaking the representation of these individuals for that reason.

The disqualified attorneys may have a claim for reimbursement of the expenses reasonably incurred prior to their disqualification. The disqualified attorneys may also have the right to assert an interest in the recovery on a *quantum meruit* basis. Although these claims are not before the Court at this time, any financial arrangement that is strictly limited to the repayment of these reasonable expenses and any *quantum meruit* payment that may be lawfully owed will not be disapproved, and such a limited agreement will not be grounds for disqualification of Provost Umphrey. But no other financial arrangement will be deemed consistent with my order of disqualification. Of course, Barrett and the other disqualified attorneys may, if they choose, waive their claims for these sums, as the firm of Nutt and McAlister has done. But they are not required by my order of disqualification to do so.

The Declaration of Walter Umphrey states "KLG has no agreement, express or implied, with respect to referral fees, litigation expenses or any other matter involving Katrina Litigation with Provost Umphrey." (Declaration of Walter Umphrey, Exhibit One to Plaintiff's Memorandum of Law in Response to Defendant State Farm Fire and Casualty Company's Motion to Compel Compliance with Order of Disqualification and Objection to Notice of Appearance of Provost Umphrey Law Firm, L.L.P.)

To address the concerns State Farm has expressed and to clarify the terms on which Provost Umphrey may represent the plaintiff in this case (and the plaintiffs in other cases in which it will act as counsel for the former clients of the SKG), I will require that Barrett and the Provost Umphrey attorney who appears on behalf of the former clients sign and file in the record (of this case and of any other case in which Provost Umphrey undertakes the representation of a former SKG client) a statement that contains the following representations to the Court:

1. There is and will be no agreement between Provost Umphrey and any of the disqualified attorneys for a division of fees or any other arrangement of any kind for the payment of compensation to any of the disqualified attorneys for work performed after the date of my order of disqualification;

2. Neither Barrett nor any of the disqualified attorneys will participate, directly or indirectly, with Provost Umphrey in the future representation of these former clients; and

3. There is and will be no financial arrangement or understanding in connection with any Katrina case between Provost Umphrey and any of the disqualified attorneys for the payment of any sums other than expenses reasonably incurred before April 4, 2008, and for services rendered before April 4, 2008, on a *quantum meruit* basis, if a right of recovery for these sums were asserted and established.

Accordingly, I will deny State Farm's motion, subject to the condition that the statement set out above be filed within fourteen days of the date of this opinion. Failure to timely file this statement will result in the disqualification of Provost Umphrey. An appropriate order will be entered.

**DECIDED** this 12th day of June, 2008.

                                        s/ L. T. Senter, Jr.
                                        L. T. SENTER, JR.
                                        SENIOR JUDGE